IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CANDACE MAXINE WOOD, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.10-CV-248-GKF-FHM |
| | ) |
| CASE & ASSOCIATES PROPERTIES, INC., | ) |
| a foreign corporation, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss [Doc. No. 12] of defendant Case & Associates Properties, Inc. ("Case") filed pursuant to Fed.R.Civ.P. 12(b)(1).[1] Case, citing Fed.R.Civ.P. 12(b)(1), asserts plaintiff Candace Maxine Wood's ("Wood") first claim for relief for failure to make reasonable accommodations in violation of the Americans with Disabilities Act of 1990 ("ADA") should be dismissed for failure to exhaust administrative remedies.

The history of this case is set forth in the court's Opinion and Order of November 10, 2010. [Doc. No. 21]. Plaintiff was employed by Case in 1998. She had hip replacement surgery in October of 2008, took a leave of absence under the Family Medical Leave Act, and returned to work on January 19, 2009. Case terminated her employment on February 19, 2009, based on attendance issues. Case submitted pre-charge information with the United States Equal

---

[1] In its Motion to Dismiss, Case sought dismissal of the first claim for relief for failure to make reasonable accommodations under Rule 12(b)(1) and the third claim for relief for violation of Oklahoma's Anti-Discrimination Act ("OADA"), 25 O.S. §1001, *et seq.* pursuant to Rule 12(b)(1). The court, in its order of November 10, 2010, denied the motion to dismiss the OADA claim and deferred ruling on the failure to accommodate claim pending submission by the parties of supplemental evidentiary material. [Doc. No. 21 at 7].

Employment Opportunity Commission ("EEOC") and on August 5, 2009, signed a Charge of Discrimination, alleging Case discharged her in violation of Title I of the ADA. [Doc. No. 12-1, Charge of Discrimination]. The Charge did not allege that Case failed to make reasonable accommodations to her known physical limitations. She received a Right to Sue letter and filed the instant action, asserting claims for failure to accommodate in violation of the ADA, termination based on her disability in violation of the ADA and alleged violation of Oklahoma's Anti-Discrimination Act. Case asserts the failure-to-accommodate claim should be dismissed because it was not raised in the EEOC charge. Plaintiff contends the intake questionnaire and other documents contained in the EEOC charge file should be construed to have requested agency action and relief on her behalf with respect to the failure-to-accommodate claim. The court, citing *Federal Express Corporation v. Holowecki,* 552 U.S. 389 (2008), directed the parties to file supplementary documents from the EEOC charge file which would shed light on whether plaintiff's filings put the EEOC on notice that it should take action on a claim of failure-to-accommodate.

In response, plaintiff filed the Intake Questionnaire and an ADA Disability Questionnaire she completed, as well as a letter from Jaafar M. Bazih, M.D., with Tulsa Bone & Joint Associates–all allegedly from the EEOC charge file.[2] Defendant, in its response, submitted its requests to the EEOC for the file, as well as a February 5, 2009, letter from its human resources manager to plaintiff and medical releases from plaintiff's treating physician, Dr. Bazih.

---

[2]It is unclear if the documents are actually from the EEOC charge file. None of the documents have any EEOC stamp on them. Plaintiff has provided the dates on which they were "submitted" to the EEOC. Defendant states that it has twice requested the EEOC to send it a copy of the charge file. To date, the EEOC has not responded to defendant's request.

## I. Documents Submitted to EEOC

### A. Intake Questionnaire

The Intake Questionnaire, which plaintiff signed on July 14, 2009, asks:

> **5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, action(s) and include the name(s) and title(s) of the persons who you believe discriminated against you.

[Doc. No. 22-1, Intake Questionnaire at 2]. Plaintiff provided the following answer:

> A) Date: 2/19/2009   Action: Terminated because I was in a wheelchair. I was going to make up my time. They wanted me out of the wheelchair. I was going for more therapy to do this. They said that my benefits were gone and they were not letting [me] have more time off.
>
> Name and Title of Person(s) Responsible: Linda Main, with full knowledge, Human Resources Manager, Sue Whitener.

[*Id.*]. The questionnaire also asked:

> **6. What reason(s) were given to you for the acts you consider discriminatory? By whom? Their Job Title?**

[*Id.*]. Plaintiff responded as follows:

> They said that they weren't going to allow me time off to go to therapy to get out of wheelchair. I was scheduling for late in the day and was going to make up my time. I worked five weeks after my surgery which kept me in a wheelchair. They urged me to go to therapy to get out of wheelchair. When I said that I was going, they let me go. Sue Whitener. Human Resources Manager.

In response to the question, "Did you ask your employer for any assistance or change in working condition because of your disability?", she answered affirmatively, stating she needed this assistance or change in working condition in order to do her job, and indicating she made the request verbally on February 12, 2009, to Linda Main, A/P Supervisor. [*Id.*]. She described the requested assistance as follows:

> I needed help posting letters and putting mail in slots in the mail room. I couldn't get my wheelchair in the mail room. Linda said that this was unexceptalbe [*sic*].

[*Id.*].

## B. ADA Disability Questionnaire

In the ADA Disability Questionnaire, which plaintiff signed on August 8, 2009, plaintiff responded to the question, "Please indicate below each **management official** (name and job title) you notified at your company of your impairment. Please indicate **how** and **when** this occurred. If you made the notification in writing and have a copy, please attach." [*Id.* at 4]. Plaintiff responded:

> Sue Whitener–Human Resources Manager
> Linda Main–A/P Supervisor
> At group meeting, they said that I was not doing my total job. I said that I couldn't. My wheelchair, which is large, would not go through the door into mail room & come back out.

[*Id.* at 4-5]. The questionnaire stated: "Please indicate below whether or not you notified your company of any need for a 'reasonable accommodation'. If so, please indicate **what** the accommodation was, the **date** of such request, **to whom** you made the request and the **necessity** for the accommodation....[*Id.* at 5]. Plaintiff responded:

> Requested of Linda Main that a co-worker could help me post letters.

[*Id.*]. The questionnaire stated, "If your 'reasonable accommodation' was denied, please indicate the reasons for such, the date it was denied and the name of the company official (and correct title) who denied such." [*Id.*]. Plaintiff stated:

> Linda said that I needed to do my own job and not "impose" on my co-worker.
> Linda Main–A/P Supervisor

[*Id.*].

### C.  Bazih Letter

In her response, plaintiff stated she had submitted "several medical records" to the EEOC. The only record attached to her response, however, is a letter dated January 16, 2009, addressed "To Whom It May Concern," in which Dr. Bazih stated:

> Candace Wood is a patient of mine who underwent total hip arthroplasty on October 21, 2008.  Following the surgery she fell on more than one occasion.  She subsequently had to be admitted to the hospital and underwent open reduction internal fixation fractured femur, revision femoral head and reduction of dislocated left total hip on October 28, 2008.  At this time I feel it is medically necessary that Ms. Wood have a heavy duty wheelchair with a 4 inch seat cushion due to her unsteady gait, inability to transfer from sitting to standing without a lift chair and inability to walk long distances.  If I can be of any further help to you, please let me know.

[Doc. No. 22-3, Bazih Letter].[3]

### II.  Analysis

The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. §12112(a).  The ADA also provides that the term "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. §12112(b).  "Each incident of discrimination

---

[3]Defendant questions whether this letter was in fact submitted to the EEOC and contends that, while it received signed work release forms from Bazih, it *never* received this letter.  For purposes of this motion, however, the court assumes the letter was provided to the EEOC.

constitutes a separate actionable 'unlawful employment practice'" for which a plaintiff must exhaust administrative remedies. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002); *See also Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003). Thus, defendant asserts–and plaintiff does not contest–that in order for the plaintiff to have exhausted her administrative remedies with respect to the failure-to-accommodate claim, it must have been raised in her charge.[4]

Under *Holowecki,* an EEOC filing "is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf." 552 U.S. at 404. Thus, *Holowecki* requires this court to consider whether plaintiff's filings put the EEOC on notice that it should take action on a claim of failure-to-accommodate.

Before *Holowecki,* the Tenth Circuit held that a document filed with the EEOC constitutes a charge where: (1) the document satisfies the requirements of 29 C.F.R. §1601.12 (i.e., a written statement sufficiently precise to identify the parties and to describe generally the actions complained of); (2) the evidence demonstrated that the complainant sought to activate the EEOC's administrative process; and (3) the EEOC treated the document as a charge. *Semsroth v. City of Wichita,* 304 Fed. Appx. 707, 713 (10th Cir. 2008) (unpublished opinion), citing *Jones v. United Parcel Service, Inc.,* 502 F.3d 1176, 1183 (10th Cir. 2007).

In the wake of *Holowecki,* the Tenth Circuit has held that with respect to the second factor, courts must now evaluate whether a filing constitutes a complainant's request for remedial

---

[4] According to plaintiff, the mail room incident occurred February 12, 2009, approximately a week before she was terminated. [Doc. No. 22-1 at 2]. The fact that the alleged failure-to-accommodate claim and the wrongful discharge claim arose on different dates further supports the conclusion that the incidents gave rise to separate actionable unlawful employment practices.

action from an *objective* viewpoint. *Semsroth,* 304 Fed. Appx. at 713 citing *Holowecki,* 552 U.S. at 402 ("[I]f a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."). Regarding the third factor, the Tenth Circuit stated, "[W]e now make plain that we do not require evidence that the EEOC actually treated a filing as a charge to construe that document as such. Instead, the EEOC's subsequent conduct merely informs our determination regarding whether the document can be reasonably construed as a request for agency action." *Semsroth,* 304 Fed. Appx. at 713.

In keeping with *Holowecki* , the Tenth Circuit in *Semsroth* held that an EEOC intake questionnaire can, under certain circumstances, constitute a "charge" of discrimination as that term is used in 42 U.S.C. §2000e-5(e)(1). *Id.* at 712. A document filed with the EEOC constitutes a "charge" if it: (1) provides the minimum amount of information required by 29 C.F.R. §1601.12 (i.e., a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of); and (2) can be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee. *Id.* at 712-13. The Tenth Circuit stated:

> "Standing alone, these questionnaires cannot reasonably be construed as 'a request for the agency to take remedial action' because they relate only factual information about the Officers' allegations of discrimination and make no requests of the agency. *See, e.g., Holowecki,* 128 S.Ct. at 1159-60 (holding that an intake questionnaire constituted a charge because of an attached affidavit that stated "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment...."). In addition, the language of the intake questionnaire form does not suggest that an employee requests action against her employer simply by filling out the form. Instead, the form merely requests information using statements like: "Please tell us the harm that you experienced" and "Why do you believe that your harm was for the

[discriminatory] reason(s) stated in the previous question?"

*Id.* at 713. The court, declaring, "Our inquiry, however, does not end with the intake questionnaire," noted that after submitting the questionnaires to the EEOC, each plaintiff received letters from the EEOC informing them they had not filed charges as a result of the questionnaires and directing the plaintiffs, three female police officers, to take additional steps, including contacting the EEOC, if they wished to file a charge. *Id.* at 714. The letters also advised that if the officers elected to file a charge, it was likely the case would immediately be closed and a Dismissal/Right-to-Sue document would be issued to them. The record indicated that only two of the officers received Right-to-Sue letters. *Id.*

Based on this record, the court concluded the two officers who received Right-to-Sue letters had, in effect, filed charges with the EEOC . In so ruling, the court stated:

> We stress that the EEOC's subsequent conduct is not a necessary prerequisite for filing a charge. Here, we consider the EEOC's subsequent conduct only as evidence that Semsroth and Voyles must have contacted the EEOC subsequent to filing the intake questionnaire to request EEOC action, because the EEOC had advised these two plaintiffs that it would not issue right-to-sue letters to them in the absence of express requests for action.

*Id.* The court found the record indicated the remaining officer, Warehime, had not taken steps necessary to demonstrate a desire to start the EEOC process; therefore, she had failed to file a charge with the EEOC. *Id.*

In both *Holowecki* and *Semsroth*, the court determined plaintiffs had, in their communications with the EEOC, made an affirmative request for the EEOC to take action.[5] Here,

---

[5]In *Holowecki,* the plaintiff had supplemented her intake questionnaire with a six-page affidavit which concluded with a request that the agency "[p]lease force Federal Express to end their age discrimination plan so we can finish our careers absent the unfairness and hostile work environment created within their application of *Best Practice/High-Velocity Culture Change.*"

8

the plaintiff filled out the Intake Questionnaire and the ADA Disability Questionnaire, both of which described the mail room issue. However, there is no record she made any kind of affirmative request for remedial relief with respect to the failure-to-accommodate claim. To the contrary, even after the EEOC sent her a draft charge which included the termination claim but excluded the failure-to-accommodate claim, she did not ask the EEOC to expand or correct the charge.[6] The court finds, therefore, that her communications cannot be reasonably construed as a request for the agency to take remedial action with respect to the mail room issue. Plaintiff has thus failed to exhaust administrative remedies on the failure-to-accommodate claim, and the court lacks subject matter jurisdiction of the claim.

### III. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss [Doc. No. 12] the first claim for relief pursuant to Rule 12(b)(1) is granted. The Motion to Dismiss the third claim for relief has previously been denied.

---

552 U.S. at 1159-60. In *Semsroth* the court concluded from the discourse in the letters from the EEOC as well as the existence of the right-to-sue letters, that two of the officers "took the affirmative steps necessary to signal their desire to the EEOC to start its administrative process." 304 Fed.Appx. at 714.

[6]"The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified." *Logsdon v. Turbines, Inc.,* 2010 U.S. App. LEXIS 21639, at *8 n. 3 (10th Cir. October 20, 2010) (unpublished opinion). The court in *Logsdon* held that since plaintiff had the opportunity to review the charge before signing it, but did not add the termination claims to the charge, it was not reasonable to expect the EEOC to investigate her discharge as discriminatory or retaliatory based solely on a prior "remote" reference to the discharge in a time line she submitted to the EEOC. *Id.* at *8-*9.

ENTERED this 29th day of December, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma